Jackson v. Coffman.

J. M. JACKSON *v.* W. P. COFFMAN *et al.*

(*Jackson.* April Term, 1903.)

1. **ATTACHMENT.** Bill attaching equity in land must make holder of legal title a party.

A creditor filing an attachment bill against his nonresident debtor, by which he attaches certain lands of his here, but fails to mention the first deed of trust, or to make the trustees therein parties defendant, although it makes a second mortgage a party defendant, takes nothing by his attachment. (*Post, pp.* 273-274.)

Cases cited and approved: Lane v. Marshall, 1 Heisk., 30; Blackburn v. Clarke, 85 Tenn., 508.

2. **MORTGAGES AND DEEDS OF TRUST.** Foreclosure of prior deed of trust extinguishes subsequent mortgage whose lien is transferred to surplus.

The effect of the foreclosure of the first deed of trust on land is to extinguish a second mortgage, and to transfer the lien of the second mortgage to the surplus proceeds arising from such foreclosure sale. (*Post, pp.* 274-276.)

3. **SAME.** Same. Garnishment of surplus of foreclosure sale does not defeat second mortgagee's lien.

An unsecured creditor's attachment levied by proper garnishment process on the surplus proceeds, arising from foreclosure sale under prior deed of trust, does not defeat the second mortgagee's lien. (*Post, p.* 276.)

Case cited and approved: Nolen v. Crook, 5 Humph., 312.

FROM SHELBY.

Appeal from the Chancery Court of Shelby County.—
F. H. HEISKELL, Chancellor.

W. B. GLISSON and MALONE & MALONE, for complainant.

CARROLL, MCKELLAR & BULLINGTON and WATSON & FITZHUGH, for defendants.

MR. CHIEF JUSTICE BEARD delivered the opinion of the Court.

This is a controversy between two adverse claimants over the surplus proceeds of a tract of land lying in Shelby county, realized by Eldridge and Richardson, trustees, who foreclosed a trust deed made by the defendant Coffman to them to secure a purchase-money note described therein. The complainant claims that, by proper process in this case, he impounded this fund, and is entitled to have it applied to the debt against Coffman, which he sets up in his bill; and the defendant the Chickasaw Cooperage Company rests its contention upon a mortgage second in point of time to this trust deed, made by Coffman to secure it in large advances made by this company to him.

The bill was filed on the 15th of May, 1899,

and in it complainant alleged that Coffman was indebted to him in an amount set out therein; that he was the owner of this tract of land, but a nonresident of the State; and that complainant was entitled to attach this property and hold it as security for the satisfaction of the decree which he asked the court to render in his favor as such creditor.

As the holder of the mortgage above referred to, which bore date the fifteenth of February, 1899, the Chickasaw Cooperage Company was made a defendant, and it was called upon to disclose in its answer what advances had been made on the faith of this security to Coffman; but complainant averred, on information, that there was little, if anything, left of this mortgage debt.

In accordance with the prayer of the bill, an attachment was issued and levied on the land. At the time of filing the bill there was outstanding the trust deed to Eldridge and Richardson, which antedated the mortgage made by Coffman to the Cooperage Company. The existence of this trust deed seems to have been overlooked by the draftsman of the bill. At any rate, the complainant proceeded against the land without any mention of this conveyance, and without making the trustees parties defendant. This being so, it is evident complainant took nothing by his attachment. *Lane* v. *Marshall*, 1 Heisk., 30; *Blackburn* v. *Clarke*, 85 Tenn., 508, 3 S. W., 505.

Subsequently, however, on the thirty-first of January,

1900, the complainant filed an amended and supplemental bill, in which, after repeating the allegations of his original bill, it was averred that on the fifteenth of December, 1898, Coffman had executed a mortgage to the Chickasaw Cooperage Company of all the white oak timber on certain lands in the State of Arkansas, and on the machinery to be erected on these tracts to manufacture this timber into staves, together with all the bolts or staves that might be sawed or cut from it, to secure a note of $2,330 due the company, and "other advances to be made."

It was also alleged that this indebtedness secured by the Arkansas mortgage had been greatly reduced by the fifteenth of February, 1899, the date of the Tennessee mortgage, and that since that date, as well as since the filing of the original bill and the levy of the attachment, the Cooperage Company had received many car loads of staves which were shipped by Coffman, the aggregate value of which was at least $12,000, which sum, it was charged, was ample to discharge all liabilities secured by the land mortgage existing at the date of the levy of the attachment, and that by operation of law this mortgage was released as against complainant, and the property covered by it opened to the attachment of complainant. This pleading, as did the original bill, omitted all mention of the trust deed, and also failed to make the trustees parties defendant.

After the filing of this amended and supplemental

Jackson v. Coffman.

bill, another attachment was issued. It seems that on April 10, 1900, the trustees, Eldridge and Richardson, foreclosed this trust deed, and from the proceeds of sale had remaining in their hands, after satisfying the trust deed and expenses, a considerable surplus. Upon this the last attachment was levied by proper garnishment process, and it is this surplus which complainant seeks to reach; and his contention is that either under the original attachment on the land, or else by virtue of the garnishment, he has the right to appropriate it to his debt. As has been seen, this claim cannot be rested on the original. Can it be on the latter attachment? The record clearly shows that on the twelfth of May, 1899, Coffman's indebtedness to the Chickasaw Cooperage Company, secured by the Arkansas and Tennessee mortgages, amounted to the sum of $9,673.09, and that from that date up to the time of the service of the garnishment, the tenth of April, 1900, it had additionally advanced to him, in various amounts and at various times, sums aggregating $10,854.26, making a total debit on that day of $21,028. It also shows that at this latter date the sum total of Coffman's credits with the company was, from all sources, $10,424.31.

We think there is little difficulty, in view of these facts, in determining the respective rights of the parties. When the trust deed on this land was foreclosed, the effect of such foreclosure was to extinguish the second mortgage; but, as to the surplus left after the payment of the trust deed and the expenses of sale, there can be

no doubt.    It stood in the place of and represented the equity of redemption, upon which, by virtue of its mortgage, the Cooperage Company had a lien.    2 Jones on Mortgages, sec. 1687.    This being so, the question is, under what sound rule can complainant deprive this Company of its rights to this surplus, and have it applied to this claim, when his lien is inferior in point of time?    None has been, and we think none can be, found. Had complainant, after his levy by garnishment on this surplus fund, filed a supplemental bill, invoking the doctrine of marshaling securities, upon the ground that the Cooperage Company had two securities, and he a lien only on one of these, his claim would have been entitled to equitable consideration.    But this was not done, and such is not the theory of his case.    He comes as an attachment creditor, and asks the court to oust a mortgagee who is first in time and right from a security to which he is entitled, and apply it to his (the complainant's) claim.    This cannot be done.    *Nolen* v. *Crook,* 5 Humph., 312.

In conclusion, it is proper to say that the rule as to application of payments, invoked by complainant, does not arise on the facts presented in this record.

The decree of the chancellor, save as to the personal decree against Coffman, is reversed, and the bill is dismissed as to the Chickasaw Cooperage Company, at cost of complainant.