VARIETY FIRE ,DOOR CO.; FISCHER LIME & CEMENT CO.
and H. S. SUTTON v. THE HANSON-WORDEN CO. et al.
Consolidated Causes.

Western Section. March 1, 1929.

Petition for Certiorari denied by Supreme Court, June 15, 1929.

Byars, Swift & Sternberger, of Memphis, for appellant.
G. P. Douglass, of Memphis, for appellees.

SENTER, J. These consolidated causes were bills filed by the respective complainants against the defendant, Hansen-Worden Company, as the contractor; S. H. Kress & Company, as the lessee and C. N. Grosvenor and Olivia H. Grosvenor, as the owners of one of the lots; and Mary Goodlett Haller, individually and as trustee, Rebecca Goodlett Phillips, individually and trustee, and Fleecie Goodlett Wynne, individually and trustee, as the alleged owners of the other lot or portion of the property involved, for the purpose of enforcing mechanic's and materialmen's liens against the prop-

erty described in the bill, as subcontractors and furnishers of the materials sold to the defendant contractor and used in the construction of the large store building which the defendant, Kress & Company, had erected on the property under a contract with the defendant, Hanson-Worden Company, as the contractor.

It appears that during the early fall of 1926, the defendant, S. H. Kress & Company, a corporation, began the erection of a large store building situated on the west side of Main street in Memphis, Shelby county, Tennessee, on the two parcels of real estate described in the respective bills of the respective complainants; that the defendant S. H. Kress & Company had leased a portion of the real estate from Olivia H. and G. N. Grosvenor, the owners of that portion, and at about the same time leased the remainder of the space upon which the building was erected from the defendants, Mary Goodlett Haller, Rebecca Goodlett Phillips, and Fleecie Goodlett Wynne, as trustees, and in which one Mary A. Goodlett, as trustee, joined in said lease. The building was substantially completed on April 22, 1927. A large number of mechanic's lien suits and materialmen's suits and claims were instituted and filed by various persons and concerns claiming liens against the building and real estate for materials alleged to have been furnished in the construction of said building, and labor alleged to have been performed on said building.

The Hanson-Worden Company, a corporation, obtained the contract for the erection of this building from the defendant, S. H. Kress & Co.

Numerous questions are made by the pleadings. The Chancellor ordered a reference to the Clerk and Master on the following matter:

"1.—The respective amounts of the indebtedness, if any, still due Fischer Lime & Cement Co., H. S. Sutton and Variety Fire Door Company.

"2.—Whether or not the respective complainants gave written notice to S. H. Kress & Co., and the various owners of the real estate, within thirty days after the furnishing of labor and material or within thirty days after completion of the building, that liens were respectively claimed upon the property to secure payment of the debts alleged to be due the respective complainants by Hanson-Worden Co.

"3.—Were all suits filed within ninety days after the giving of written notice that liens were claimed?

"4.—What was the total contract price to be paid Hanson-Worden Co. by S. H. Kress & Co. for constructing the building, including amendments to the original contract and also extras?

"5.—What amounts had been paid by Hanson-Worden Co. (J. B. Hanson & Co.) for labor or materials furnished it, or what amounts

had been paid by Hanson-Worden Co. (J. B. Hanson & Co.) for such other items of labor and material furnished it and used in the construction of said Kress building, independent of the pay-roll and labor items dealt with in Section 9 of the order of reference, giving the names of all such creditors and the amounts paid to each?

"6.—What claims, if any, against Hanson-Worden Co. for labor or material furnished it, were settled by Continental Casualty Co., the surety on Hanson-Worden Company's bond, Hanson-Worden Co. or S. H. Kress & Co., and what amount was paid in settlement of such claims, giving the names of such creditors and the amounts settled for as well as the amounts claimed.

"7.—What claims, if any, for labor and materials furnished Hanson-Worden Co. are now outstanding and unpaid, for which lien suits have been filed and are now pending, giving the names of such creditors and the amounts claimed to be due them.

"8.—What claims for labor or material furnished Hanson-Worden Co. remain unpaid, for which no suit has been brought to enforce a mechanic's lien, giving the names of such creditors and the amounts due each.

"9.—What amount did Hanson-Worden Co. expend for labor in the construction of the store building.

"10.—Was any labor or material diverted by Hanson-Worden Co. and used in repairing adjoining property. If so give amounts received by Hanson-Worden Co.

"11.—Fix the date of completion of the Kress building."

After considerable proof was taken on the various items or matters covered by the order of reference, the Master made and filed his report. Numerous exceptions by both parties were filed to the report of the Master, and the Chancellor being of the opinion that the report was not fully responsive to the order on certain matters, re-referred these matters to the Master for an additional report, and for taking further evidence.

The final report of the Master is set out in the final decree. It is unnecessary to set out the findings and report of the Master on the many questions and matters contained in the reference, since the decree makes reference to the report and discusses and disposes of all matters contained in the report of the Master to which any exceptions were filed.

On practically all questions of fact there is a concurrent finding by the Master and the Chancellor, with evidence to sustain same. We have reviewed the evidence on all matters to which exceptions were filed, and fully concur with the conclusion reached by the Chancellor as set forth in the final decree.

The decree is very full, and disposes of all questions presented, and while it is elaborate, we deem it well to set out the decree in

this opinion since it contains an excellent statement both as to the questions of fact and of law.

At the conclusion of the decree, exceptions by the respective parties to the ruling of the Chancellor on the matters and questions presented on this appeal, follow. Since practically the same questions were made, as in the special appeals prayed by the respective parties to certain portions of the decree, the exceptions will also be quoted. The decree and the exceptions thereto, are as follows:

"1. That the defendant, Olivia H. Grosvenor, is the owner in fee simple of the following described lot of real property, to-wit: (Here follows the description.)

"That the defendant, C. N. Grosvenor, has only such an interest in the above-described property, as accrues to him as the husband of Olivia H. Grosvenor, and that the title to the following described lot of real estate, being the second parcel of real estate described in the original bill, is held under the following instruments, to-wit: The will of Wm. H. Goodlett, deceased, dated November 17, 1879, probated Feb. 7, 1888, and recorded in Will Book 10, page 195 of the Probate Court Clerk's Office of Shelby County, Tenn., the conveyance and trust executed by Mary A. Goodlett of date April 24, 1917, recorded in Record Book 665, page 375 of the Register's Office of Shelby county, Tenn., wherein an undivided one-half interest in the hereinafter described property, being said second parcel of real estate described in the original bill, is conveyed to Mary Goodlett Haller, Rebecca Goodlett Phillips, and Fleecie Goodlett Wynne, as trustees, and the will of said Rebecca Goodlett Phillips, deceased, probated June 17, 1927, and recorded in Will Book 37, page 521, of the Probate Court Clerk's Office of Shelby county, Tenn., said property lying immediately south and adjoining the first parcel of real estate herein mentioned and described. (Here follows a description of the second parcel.)

"2. That under date of Feb. 26, 1924, the defendants C. N. Grosvenor and wife, Olivia H. Grosvenor, executed a lease contract, whereby they leased to the defendant, S. H. Kress & Co. the parcel of real estate hereinabove first mentioned and described, for a term beginning Sept. 1, 1926, and ending August 31, 1951: And that under date of February 26, 1924, the defendants Mary Goodlett Haller, Rebecca Goodlett Phillips and Fleecie Goodlett Wynne, as trustees, joined therein by Mary A. Goodlett, Trustee, executed a lease contract whereby they leased to the defendant, S. H. Kress & Co. the second lot or parcel of real estate hereinabove mentioned and described, for a term beginning April 1, 1924, and ending August 31, 1951.

"And that under the two aforesaid lease contracts it was agreed by and between the parties, and S. H. Kress & Co. obligated itself

to erect upon said two parcels of real estate a certain new building in accordance with plans and specifications mutually agreed upon by said parties and approved at the time said lease contracts were executed.

"The court further finds that after the execution of said lease contracts as aforesaid, that S. H. Kress & Co. entered into a written contract with the defendant, Hanson-Worden Co. (now known as J. B. Hanson & Co., Inc.) whereby the Hanson-Worden Co. undertook and agreed to construct and erect upon said lots of real estate above mentioned and described, a large store building and improvements, which were contemplated by and constructed pursuant to the terms of the above-mentioned lease contracts.

"That the total contract price agreed to be paid Hanson-Worden Co. by S. H. Kress & Co., for the construction of said store building and improvements upon said lot of real property, plus extras, amounted to the sum of $270,573.48.

"And that pursuant to said contract with S. H. Kress & Co., the Hanson-Worden Co. constructed said buildings and improvements upon said lots of real property.

"That Hanson-Worden Co. has been paid by S. H. Kress & Co., on account of said improvements erected under and pursuant to said contract, the sum of $230,266.52, leaving a balance due it of $40,306.96.

"That the buildings and improvements were completed by Hanson-Worden Co., and S. H. Kress & Co., occupied said building and opened up for business on the 22nd day of April, 1927.

"The court further finds that the complainant, Fischer Lime & Cement Co., furnished to Hanson-Worden Co., under a special contract, with the said defendant, Hanson-Worden Co. and under a special contract with the said defendant, Hanson-Worden Co., certain building materials for the purpose of being used and which were actually used, by the Hanson-Worden Co., in the construction of said building and improvements upon said lots of real property hereinabove mentioned and described, and that at the time of the filing of its original bill herein, that the Hanson-Worden Co. was indebted to complainant, Fischer Lime & Cement Co., in the principal sum of $17,083.46 for such building material so furnished by it.

"The court further finds that the complainant, H. S. Sutton, furnished to Hanson-Worden Co. under a special contract with the said defendant, Hanson-Worden Co., certain labor and material for use in the construction of said building and improvements upon said lots of real property above mentioned and described, and that at the time of filing his original bill herein that the defendant, Hanson-Worden Co. was justly indebted to complainant, H. S.

Sutton, in the principal sum of $6384.74 for such labor and material so furnished by him.

"The court further finds that by a special contract with Hanson-Worden Co., complainant, Variety Fire Door Co. furnished to the defendant, Hanson-Worden Co., certain building materials for the purpose of being used in the construction of certain buildings and improvements upon said lots of real property above mentioned and described, and that at the time of the filing of its original bill herein, that the Hanson-Worden Co. was justly indebted to complainant, Variety Fire Door Co., in the principal sum of $498.74 for such material so furnished by it.

"The court further finds that within thirty days after the furnishing of such labor and material by them as aforesaid, and that within thirty days after the furnishing of such labor and material by them as aforesaid, and that within ninety days after the completion of said buildings and improvements upon said lots of real property above mentioned and described by Hanson-Worden Co., that each of complainants gave S. H. Kress & Co. and the owners of said real property above mentioned and described, written notices that each of them claimed a mechanic's and furnisher's lien upon said lots of real property above mentioned and described, to secure payment of the respective amounts due them by Hanson-Worden Co.; and that within ninety days after the giving of such written notices of the liens claimed by them, that each of complainants filed its or his respective attachment bill herein, and caused an attachment to be issued and levied upon said lots of real property, and that said complainants have and are entitled to have declared a mechanic's and furnisher's lien on said real property as hereinafter set out.

"The court further finds that during the construction of said buildings and improvements as aforesaid, that the Hanson-Worden Co. (J. B. Hanson Co., Inc.) paid certain amounts to various firms and individuals for labor and material furnished to it for use in the construction of said S. H. Kress & Company's building in sums aggregating $104,372.74 (Sec. 5 of the Master's report—$104,201.18 —plus amount paid to Ben Hur Erection Co.—$171.56 herein allowed).

"And that in addition thereto Hanson-Worden Co. also expended for labor used in the construction of said S. H. Kress Building, the net sum of $63,573.76 (Sec. 9, Master's report).

"The court further finds that out of the labor and material furnished to it for use in the construction of the S. H. Kress Building, that the Hanson-Worden Co. diverted material to the value of $762.85 for the use in the construction of improvements on the adjoining property known as the Nisley building.

"And that in determining the net amount expended by Hanson-Worden Co. for material furnished to it for use in the construction of said S. H. Kress building, that the above-stated sum of $762.85, so diverted to the Nisley building, should be deducted therefrom.

"The court further finds that in addition to the above-mentioned payments and expenditures, that certain other lien claims of various firms and individuals against Hanson-Worden Co. for labor and material furnished by them to said company in sums aggregating $82,706.19 have been paid and settled in full by Hanson-Worden Co. or S. H. Kress & Co., by the payment of sums aggregating a total of $68,577.48 (Sec. 6 of the Master's report).

"The court finds and holds that in determining the extent of the liens against said real property herein mentioned and described, that S. H. Kress & Co. and the owners thereof, are entitled to have the gross or face amount of the claims which were compromised and settled by either Hanson-Worden Co. or S. H. Kress & Co., which amounted to the aggregate of $82,706.19, taken into consideration, and not the amounts actually expended in settlement thereof, which aggregate $68,577.58.

"The court being of the opinion that the rights of the parties became fixed within thirty days after the completion of the building on April 22, or May 22, 1926, finds and holds that S. H. Kress & Co. and the owners of the real property are entitled to a credit for the face or gross amount of such claims, and not the amounts actually expended in payment thereof, in determining the extent of the liens herein declared.

"The court further finds that the total amount expended by Hanson-Worden Co. for lienable labor and material furnished it for use in the construction of the said S. H. Kress building and improvements upon said lots of real property above mentioned and described aggregate the sum of $167,183.65, and that in determining the total expenditures for lienable labor and material furnished on said building, that the above-mentioned sum of $82,706.19 should be added thereto, making a total sum of $249,889.84.

"The court further finds and holds that the only lien claims against said lots of real property hereinabove mentioned and described for labor and material furnished, to Hanson-Worden Co. for use in the construction of said S. H. Kress & Co. building and improvements under its contract as aforesaid, now remaining outstanding and unpaid, for which mechanic's and furnisher's liens can be enforced, are the three claims involved in these consolidated causes, to-wit: Fischer Lime & Cement Co., $17,083.46; H. S. Sutton $6,384.74; Variety Fire Door Co. $498.74. And that these three claims constitute the only lien claims now remaining outstanding and unpaid for which a mechanic's and furnisher's lien can be en-

forced against the real property and improvements hereinabove mentioned and described.

"The court further finds that the total amount of paid and unpaid lien claims against Hanson-Worden Co. for labor and material furnished to it for use in the construction of the S. H. Kress building, for which mechanic's and furnisher's liens could be enforced against said real property, amount to a total of $273,856.78.

"The court further finds and holds that inasmuch as the total amount of paid and unpaid lien claims against the real property involved herein exceed the contract price of $270,573.48, that complainants are entitled to a lien only for that portion of their claims that the aggregate amount of the paid and unpaid lien claims as herein found bear to the said contract price, and which pro rata or percentage, the court fixes at ninety-eight and eight-tenths (98.8) per cent.

"It is therefore ordered, adjudged and decreed by the court as follows:

"1. That the complainant, Fischer Lime & Cement Co., have and recover of the defendant, Hanson-Worden Co., now known as J. B. Hanson Co., Inc., the said sum of $17,083.46, together with accrued interest thereon from the date of the filing of its original attachment bill in this cause, amounting to the sum of $1437.85 at the present time, or a total judgment of $18,521.31, and all costs accrued herein, for which an execution will issue as provided by law.

"2. That the complainant, H. S. Sutton, have and recover of the defendant, Hanson-Worden Co., now known as the J. B. Hanson Co., Inc., the said sum of $6384.74, together with accrued interest thereon from the date of the filing of his original attachment bill in this cause, amounting to the sum of $5032.04 at the present time, or a total judgment of $6916.78, and all costs herein, and for which amount an execution will issue as provided by law.

"3. That the complainant, Variety Fire Door Co., have and recover of the defendant, Hanson-Worden Co., now known as J. B. Hanson Co., Inc., the said sum of $498.74, together with accrued interest thereon from the date of the filing of its original attachment bill in this cause, amounting to the sum of $44.89 at the present time, or a total judgment of $543.63, and all costs accrued herein, for which amount an execution will issue as provided by law.

"It is further ordered, adjudged and decreed by the court, that complainants and each of them have a mechanic's and furnisher's lien upon said lots of real property hereinabove mentioned and described and especially the leasehold interest of S. H. Kress & Co., in and to said property, to secure payment of that proportion

or percentage of the judgments herein awarded them, that the total amount of paid and unpaid lien claims for labor or material as herein found by the court, amounting to an aggregate of $273,-865.78 bear to the total contract price, including extras agreed to be paid to Hanson-Worden Co., by S. H. Kress & Co., amounting to the sum of $270,573.48 or 98.8 per cent, except as to the interest of Mrs. Rebecca Goodlett Phillips, deceased.

"It is accordingly ordered, adjudged and decreed, that complainants and each of them are entitled to a mechanic's and furnisher's lien against the aforesaid lots of real property and improvements thereon and said leasehold interest or estate of S. H. Kress & Co. therein, to the extent of ninety-eight and eight-tenths (98.8) per cent, of their respective judgments herein awarded each of them, except as to the interest of Mrs. Rebecca Goodlett Phillips, deceased.

. "It is further ordered, adjudged and decreed by the court that complainants are entitled to have said lots of real property and improvements thereon including the leasehold interest or estate of S. H. Kress & Co., and except the interest or estate of Mrs. Rebecca Goodlett Phillips, deceased, sold in satisfaction of the mechanic's and furnisher's liens herein adjudged in their favor, and the payment of said indebtedness due them by Hanson-Worden Co. (J. B. Hanson Co., Inc.); and that unless said indebtedness to the extent of the liens herein adjudged is paid and satisfied within thirty days from date hereof, together with all costs of this cause, the Clerk and Master of this court will, after advertising according to law, sell said real property above mentioned and described at public out-cry to the highest and best bidder, on a credit of six and twelve months, taking from the purchaser notes for the purchase money, drawing interest from the date of sale, with one or more solvent sureties thereto, and retaining a lien on the land as further security for the purchase money. Said sale will be made in front of the court house door (southwest or Adams Ave. entrance thereof) in Memphis, Tenn., and according to the notice prescribed by law.

"The court holds and decrees that the remaining owners and S. H. Kress & Co., by reason of the interest which Mrs. Rebecca Goodlett Phillips held having been excepted from the sale hereinbefore ordered, are not entitled to a proportionate reduction in the amounts they are required to pay to clear their respective interests of the liens herein declared.

"And on special application of complainants, both in their bills and at bar, that said real property be sold on a credit and in bar of all equity of redemption, said sale will be made on the credit as aforesaid, and when made and confirmed by the court, no right of redemption or repurchase shall exist in the said defendants, or in

any of their creditors, but the title of the purchaser shall be absolute. . . ."

Then there follow in the decree the following exceptions and appeals:

"To the action of the court in finding and holding that the defendants, S. H. Kress & Co., and the owners of the real property involved herein, were entitled to have taken into consideration the face or gross amount of the lien claims amounting to the sum of $82,706.19 that were settled for the sum of $68,577.48 taken into consideration, and used as the basis for determining the extent of the lien claims involved in these causes, instead of using the net amount expended in settlement of said claims as the basis for determining the extent of the lien claims involved herein, the complainants duly excepted, and to the action of the court in holding and adjudging that the complainants were not entitled to a lien for the full amount of their respective judgments herein awarded them, the complainants also duly excepted. And from so much and such part of said decree complainants and each of them pray an appeal to the next term of the Court of Appeals at Jackson, which appeal is granted on condition complainants execute and file herein the usual appeal bond provided by law.

"The defendants, S. H. Kress & Co., Mary Goodlett Haller and Fleecie Goodlett Wynne, as individuals and as trustees; C. N. Grosvenor and Olivia H. Grosvenor, except to the action of the court in declaring and fixing liens against the freeholders in the two parcels of real estate herein described and in ordering the same sold in satisfaction of the respective liens so declared in favor of the respective complainants.

"The said defendants further except to the action of the court in declaring and adjudicating any liens at all against the two parcels of real estate in this cause, particularly against the leasehold interest of S. H. Kress & Co., and especially do said defendants except to the action of the court in adjudicating liens against the parcels of real estate involved in this cause to the extent of 98.8 per cent of the interest respectively allowed the three complainants herein upon the judgments respectively given them, the effect of this decree being that said defendants, are, in substance, required to pay interest upon the judgments herein rendered against Hanson-Worden Co. and the said defendants, S. H. Kress & Co., Mary Goodlett Haller, and Fleecie Goodlett Wynne, as individuals and as trustees, C. N. Grosvenor and Olivia H. Grosvenor, therefore earnestly except to all such portions of this decree, as in effect requires

them to pay interest in order to clear the property involved in these causes of the liens respectively allowed complainants.

"Furthermore, the said defendants except to the action of the court in fixing the percentage at 98.8 per cent and in ordering the second parcel of real estate described herein sold, when it affirmatively appears that Rebecca Goodlett Phillips died prior to the filing of the H. S. Sutton and Fischer Lime & Cement Co. bills, and a few days subsequent to the filing of the Variety Fire Door Co.'s bill, neither case having been revived or amended so as to bring in the said Rebecca Goodlett Phillips' heirs, legatees, or successors in trust.

"Said defendants further except to the action of the court that the remaining owners and S. H. Kress Co., by reason of the interest which Mrs. Rebecca Goodlett Phillips held at her death having been excepted from the sale are not entitled to a proportionate reduction in the amount they are required to pay to clear their respective interests of the lien so declared.

"To the action of the court in overruling exceptions 1, 2 (save aforesaid Ben Hur Erection Co.'s item of $171.58) 3, 4 and 5, filed by said defendants to the Master's report as well as the exceptions filed by said defendants to the Master's ruling on complainant's exceptions to the Master's report concerning amounts paid by Hanson-Worden Co. to Fischer Lime & Cement Co., Missouri Portland Cement Co. and Pidgeon-Thomas Iron Co., and to the action of the court in confirming the Master's report in said particulars; the defendants S. H. Kress & Co., Mary Goodlett Haller and Fleecie Goodlett Wynne, as individuals and as trustees, C. N. Grosvenor and Olivia H. Grosvenor also duly except.

"From so much and such parts of this decree as the said defendants, S. H. Kress & Co., Mary Goodlett Haller and Fleecie Goodlett Wynne, as individuals and trustees, C. N. Grosvenor and Olivia H. Grosvenor, have entered their above-stated exceptions, the said defendants and each of them pray an appeal to the next term of the Court of Appeals. . . . ."

Appeals by the respective parties to this court have been perfected, and both parties have assigned errors.

The assignments of error by appellants, S. H. Kress & Co., C. N. Grosvenor and Olivia H. Grosvenor and Mary Goodlett Haller and Fleecie Goodlett Wynne, are as follows:

"1. The learned Chancellor committed error in declaring liens upon the two parcels of real estate involved in these causes and ordering said real estate sold, except as to the interest of Mrs. Rebecca Goodlett Phillips, deceased, because:

"(a) There is no privity of contract shown between the owners of the land, on the one hand, and the contractor and subcontractors, on the other hand;

"(b) There is no proof in the record anywhere showing who owns the second parcel of real estate described in the respective bills, which represents exactly one-half of the property on which this large and handsome building was built;

"(c) Mrs. Rebecca Goodlett Phillips died a few days subsequent to the filing of the Variety Fire Door Co. case, and prior to the bringing of the Sutton and the Fischer Lime & Cement Co. cases, no amendment or revivor being taken to bring Mrs. Phillips' heirs, legatees and successors in trust before the court.

"2. The learned Chancellor, in the event our first assignment be overruled, erred in holding that S. H. Kress & Co., C. N. and Olivia H. Grosvenor, Mary Goodlett Haller and Fleecie Goodlett Wynne were not entitled to a proportionate reduction in the amounts they are required to pay, by the final decree, in order to clear their respective interests of the liens declared, because the interest of Mrs. Rebecca Goodlett Phillips, deceased, was not before the court and was excepted from the sale order.

"3. The learned Chancellor committed error in 'expressly' declaring liens upon the leasehold interest of S. H. Kress & Co. because the respective bills did not seek the sale of the leasehold estate of S. H. Kress & Co., but, the absolute sale of the freehold. This relief, granted the respective complainants, has no pleading to support it, as the same is different and broader than the prayer of the bills.

"4. The learned Chancellor erred in fixing the percentage which S. H. Kress & Co. and the owners of the real estate would have to pay in order to clear the property of the liens declared at 98.8 per cent.

"5. The learned Chancellor committed error in requiring S. H. Kress & Co. and the owners of the real estate to pay 98.8 per cent of the interest allowed the respective complainants, in order to clear the real estate of the liens declared. It was insisted before him that S. H. Kress & Co. and the owners of the real estate are only required to pay the proportionate amount on the principal debt found to be due, exclusive of interest, under Sec. 3544 of Shannon's Annotated Code of Tennessee, as construed in Richards v. Lanius, 150 Tenn., 133, and Richmans Screw Anchor Co. v. Minter, 156 Tenn., 19.

"6. The learned Chancellor erred in overruling exception 1 of the parties for whom these assignments of error are made,

to the Master's report, which said exception insisted that the Clerk and Master committed error in failing to show, under Sec. 5 of his report, that Grant & Tucker, Inc., had been paid $8,095.35, and that Davis Coal Co. had been paid $114.43.

"7. The learned Chancellor committed error in overruling exception 2 of these defendants, to the Master's report, which insisted that the Clerk and Master committed error in considering that all accounts and items specified by him under subsection 'a,' Sec. 6 of his report, aggregating $4293.16, were not 'within the purview of the mechanic's and furnisher's lien laws,' it being urged that all of the items so listed under said subsection 'a' should have been allowed as lien claims against the real estate involved herein and incorporated in the claims allowed as liens, either under Section 5 of the Master's report, or Section 6 thereof. The learned Chancellor did sustain this exception insofar as the claim of Ben Hur Erection Co. $171.58, for scaffolding, was concerned, but overruled the exception as to the rest of the items embraced in said subsection 'a,' which are as follows, to-wit:"

(Here follows the list.)

"8. The learned Chancellor further erred in overruling exception 3 of these defendants, which pointed out that the Clerk and Master committed error in considering that the items aggregating $1360.34, specifically mentioned and set forth under subsec. 'b' of Section 6 of his report, were not 'within the purview of the mechanic's and furnisher's lien laws,' it being insisted by us that all such items listed under said subsection 'b' should have been allowed as lien claims, and are as follows, to-wit:"

(Here follows the list.)

"9. The learned Chancellor also committed error in overruling exception 5, of these defendants, which insisted that the Clerk and Master erred in not listing the pending lawsuit of Galloway-Eberhart Coal Co for $474, along with the list of suits filed and still pending in the court, for labor or material furnished Hanson-Worden Co. in the construction of the Kress building. This item should have been incorporated in Section 7 of the Master's report, and ordered inserted therein by the learned Chancellor.

"10. The learned Chancellor erred in overruling exception 6, of these defendants, which asserted that the Clerk and Master committed error in deducting from the total amount of the pay roll the sum of $1059.89, representing the timekeepers salary."

268

We will consider and dispose of the first and second assignments by these appellants together.

Under subsection (a) of the first assignment, it is contended that there is no privity of contract shown between the owners of the land and the contractor and subcontractors. We do not think this contention can be sustained for the reason it clearly appears that in the respective lease contracts entered into between the respective owners of the respective parcels of real estate, and S. H. Kress & Co., the matter of erecting the building on this property by S. H. Kress & Co. was not only consented to by the lessors, but it was clearly a part of the consideration for the lease contracts that this building should be erected, and the plans and specifications to be approved by the lessors. The bond required of the contractor made specific provisions for the protection of the lessors against lienable claims. This, we think, fixes privity between the owners as the lessors, and the contractor and subcontractors.

Under subsection (b) of the first assignment of error it is said that there is no proof in the record to show who owns the second parcel of real estate described in the respective bills. The record does show the owners of the property referred to, and the source of title. There is no question made in the pleadings but that those named in the pleadings as the owners of this parcel, were true owners. There was no plea of misjoinder or non-joinder of parties. We do not think this contention can be sustained.

The second assignment of error presents the question that because Mrs. Rebecca Goodlett Phillips died subsequent to the filing of one of the bills and prior to the filing of the other bill, and the causes not having been revived or amended, that these appellants could not be charged with the proportionate share of the claims which the interest or share of Mrs. Rebecca Goodlett Phillips interest in the property sustained to the whole. The Chancellor could not decree a sale of any interest that Mrs. Rebecca Goodlett Phillips, deceased, owned in the second parcel, because her heirs, legatees or successors in trust, were not parties to the cause, and no answer had been filed by her. In this situation he excepted such share or interest as Mrs. Rebecca Goodlett Phillips, deceased, may have had in this property from the decree of sale. Certainly the lessee, S. H. Kress & Co., could not be heard to complain since its lease covered on the entire interest of all the parties having an interest in either of the two parcels on which the building was erected. S. H. Kress & Co. have the leasehold estate on both parcels executed by all the parties having an interest in the property, which lease continues for a term of years expiring in August, 1951. In support of this assignment of error these appellants cite King v. Patterson, 129 Tenn., 1; Jackson v. Koffman, 110 Tenn., 271; Lane v. Marshall, 1 Heisk., 30; Blackburn v. Clark, 85 Tenn., 508. It is said that these

authorities support the contention that where the legal title is in a mortgagee, the mortgagee must be made a party defendant in order for an attaching creditor to acquire a valid lien. We think it is undoubtedly true that these authorities support the proposition that the owners of the property must be made parties in order to enforce a lien against the property, where the enforcement of the lien is by a sale of the property. In the instant case the Chancellor specifically excluded from the sale such interest as Mrs. Rebecca Goodlett Phillips may have had in this property at the time of her death, for the reason that her heirs at law, legatees, or successors in trust, were not parties and she having died before the cases were at issue, and hence the decree could not have affected such interest as she may have had at the time of her death. Under this assignments of error it is further contended that there is no evidence in the record to show who were the owners of the second parcel described in the bill. However, the bill does allege that defendants Mary Goodlett Haller, Rebecca Goodlett Phillips and Fleecie Goodlett Wynne, as individuals and as trustees, are the owners of record of the second parcel. The answers do not deny this averment of ownership as contained in the bill, but there is a statement in the answers of Mrs. Mary Goodlett Haller and Fleecie Goodlett Wynne, which states the source of this title.

In the state of the pleadings we do not think it was necessary that evidence be introduced on the subject of ownership to enable the Chancellor to determine that fact, and where it can be determined from the pleadings. The second assignment of error is accordingly overruled. However, before leaving this assignment we will say that we do not think that the case of Thomas & Turner v. Exposition Co., 137 Tenn., 1, is in point. In the present case, as before stated, the lease contract executed by the respective owners of the respective parcels to S. H. Kress & Co. made specific provision for the erection of this building, and the plans and specifications for the same to be approved by the lessor, as the owners of the property, and they not only had knowledge that the improvements would be made, but it was the chief consideration that this building would be erected, and at the termination of the lease the owners would receive the benefit of the improvement, and the improvements were accordingly made, not only by the consent of the owners, as the lessors in the respective leases, but in a sense, by their procurement, since they required the building to be erected according to certain specifications.

Under the third assignment of error it is contended that the Chancellor erred in declaring the liens upon the leasehold interest of S. H. Kress & Co., because the respective bills did not seek the sale of the leasehold estate, and that the decree went beyond the pleadings. The respective bills set out fully the leasehold estate

which S. H. Kress & Co. held in the two respective parcels of real estate on which this building was erected, and also makes S. H. Kress & Co. parties defendants in the bills, and alleges the liability of the leasehold estate of S. H. Kress & Co. With the averments in the respective bills on this subject, and a prayer for general relief, and all such relief, in addition to the relief specifically prayed for, we think the Chancellor was clearly warranted in holding and decreeing a sale of the leasehold estate owned by S. H. Kress & Co. The statutory lien under which these suits were brought, Shannon's Code, Sec. 3531, gives the lien on the lot of ground or tract of land. It has been held that a lessee for a term of years is an owner within the meaning of the statute. (Allie & Bush v. Lanier, 41 Tenn., 540.) The notices furnished by the complainants in the respective bills were furnished to S. H. Kress & Co. as the lessee of the building as well as to the owners of the respective parcels. The attachments were issued and levied upon the interest of Kress & Co. in the property, and we think it clear that the averments in the bills, the notices served, the attachments which were issued and levied, the statements in the answers, and especially the answer of S. H. Kress & Co., fully conveyed notice that such interest of S. H. Kress & Co., as the lessee, owned in the property, was sought to be reached and liens fastened thereon, and this, coupled with the prayer for general relief fully entitled the respective complainants to have their liens enforced against such interest as S. H. Kress and Co. owned as the lessee for a term of years, and to have the same sold in satisfaction of the lien debts.

The fourth and fifth assignments may be considered and disposed of together. As we construe the decree of the Chancellor in fixing the amount on a percentage basis, for which the complainants could enforce their respective liens against the property, including the leasehold estate of S. H. Kress, at 98.8 per cent of the amount of their respective claims as proved and decreed, the Chancellor followed the provision of the statute, Section 3544 of Shannon's Code, which reads as follows:

"The claims thus secured by lien for work and labor done, and the materials furnished, shall in no case exceed the amount agreed to be paid by the owner or proprietor in his original contract with the undertaker."

These appellants, in discussing these two assignments of error in the brief predicate their objections largely upon the failure of the Chancellor to include the amount set forth under assignments 6, 7, 8, 9 and 10, and refusing to consider the claims paid by the lessee or by the contractor for the items and amounts set forth under the respective assignments referred to, in arriving at the amount of lienable claims which had been paid or settled, and con-

sidered in arriving at the 98.8 per cent basis, but especially the allowance of interest on the respective claims from the date of the filing of the respective bills to the date of the decree. It being insisted that the allowance of interest brought the amount up to and above the contract price, and would require the payment by appellants of an amount in excess of the contract price in order to discharge the liens decreed by the Chancellor against the property.

We think there is merit in this latter contention. While the matter of allowing interest is in the sound discretion of the Chancellor, and ordinarily the exercise of the discretionary right of the Chancellor to allow interest should not be disturbed, unless there has been an abuse of this discretionary power. In the present case we find that each of these complainants claimed and sought to prove claims larger than was allowed by the Master in his report and confirmed by the Chancellor. It is also evident from the report of the Master that a great many claims had been filed and paid that were not, according to his report, lienable claims; a large number of lienable claim holders settled or adjusted their claims for a considerable amount less than they were claiming. These complainants could not, under the statute, have liens fixed and decreed against the property and against the leasehold estate for an amount greater than the contract sum to be paid to the contractor for the erection and completion of the building, including alterations and extras. If, therefore, the defendants, as the owners and lessee of the property, had paid all claims at the full amount, including the claims of these complainants, they would have paid a sum larger in the aggregate than the contract price. The learned Chancellor, in allowing interest from the date of the filing of the bill, evidently overlooked the fact that each of these complainants, in their respective bills, and in the notices furnished to the owners and lessee, were claiming amounts in excess of that allowed by the Master and confirmed by the Chancellor. For these reasons, rather than because the allowance of interest would bring the aggregate amount paid and to be paid by the owners and lessee to an amount in excess of the contract price, we are of the opinion that interest should not have been allowed as against these appellants. It results that this assignment of error, on the question of the allowance of interest from the date of the filing of the bill, is sustained.

Assignments six, seven and eight may be considered and disposed of together. Under these assignments it is contended that various items should have been included and considered in arriving at the amount of lienable claims paid by the lessee and the contractor, and which amounts, if the same had been allowed, would have reduced the percentage basis of the liens decreed against the property in favor of the respective complainants. The largest of these items is an item of $8095.35 paid by Hanson-Worden Co. to Grant &

Tucker as a premium on the contractor's bond executed by Hanson-Worden Co. We do not think this item comes within the provisions of the lien law. We do not think it was in any sense a lienable claim against the property improved. The lien law sets out specifically those entitled to its benefits. It is to be strictly construed as to what claims come within the purview of the statute. It is to be liberally construed in favor of those who come within the class. Before a lien can be declared on the property improved it must appear that the claimant has a lien. As was said in the case of Thompson v. Baxter, 92 Tenn., 305: "It must clearly appear that the claimant has a lien. No one is entitled to a lien unless the statute includes him or them. They are not to be included by strained construction. Unless the statute gives the lien, the party has none."

In the case of Chickasaw Hotel Co. v. Barker Const. Co., 135 Tenn., 305, 186 S. W., 115, it is said:

"While the law is strict in its requirements that the claimant shall make it clearly appear that he has a lien, yet when that appears remedial laws for its enforcement are to be liberally construed."

It seems to be the settled rule, deduced from the principles of the decisions in this state, that the statute must be strictly construed as to the parties who are entitled to the lien, and the existence of the lien must be clearly established by the proof of the facts necessary to constitute the lien; but when the existence of the lien is determined, then the statute will be liberally construed as regards the subject-matter to which the lien should attach, and as to the remedy for its enforcement. (Dunn v. McKee, 5 Sneed, 657; Luter v. Cobb, 1 Cold., 525; Kay v. Smith, 10 Heisk., 41; Nanz v. Park Co., 19 Pick., 299; Gunn v. Blue, 6 Cates, 423, and cases cited.)

Under the seventh assignment these appellants set out a long list of claims paid, aggregating the sum of $4,293.16, and contend that each of these claims constituted lienable claims, and should, therefore, have been considered by the Chancellor in fixing the basis of the lienable claims of the complainants. All of this list was disallowed by the Chancellor, except the claim of the Ben Hur Erection Co. of $171.56. This was for lumber used in building scaffolds while the building was in the course of erection. It does not appear that the Ben Hur Erection Co. knew that this particular material was intended for temporary use in the construction of the building. It was furnished to be used in the building, or in the construction of the building, and the Chancellor, we think, correctly sustained the exception to the Master's report on that item. All of the other items listed under the seventh assignment of error were disallowed by the Chancellor as lienable claims to be considered

in arriving at the basis of complainants' liens at 98.8 per cent. These items will not be set out in detail, but examples will be mentioned. For instance, the claim of Balton & Sons for painting temporary signs; the claim of Chickasaw Coal Co. for coal furnished for the temporary heating of the building while in the course of construction; the Cumberland Telephone Co. for a temporary telephone; Electric Novelty Co., temporary lights; Farrell-Calhoun Co., painting the office of the contractor, a temporary structure; Lehigh Portland Cement Co. for tarpaulins used to protect material; M. L. Martin & Co., plateglass insurance premium; Memphis Linotype Co., stationery for the use of contractor; Memphis Water Dept., water used on the job; Fly & Owen, for hauling (the nature of the hauling is not shown); Simmons Saw Co., sharpening saws; Stewart Bros. Hardware Co., for tools bought by the contractor (apparently for the use of workmen); U. S. Rubber Co., rubber boots for workmen; Western Union Tel. Co., telegrams. A similar list of items and claims is set out under the eighth assignment, and which were held by the Chancellor not to be lienable claims, aggregating $1360.34. These items are very similar in character to those above referred to. In no instance were these items materials used in the construction of the building. For the same reason, and under the same authorities referred to in the discussion of the Grant & Tucker claim for insurance premiums, we are of the opinion that the sixth, seventh and eight assignments must be overruled. This also disposes of the ninth assignment of error.

The tenth and last assignment of error complains of the action of the Chancellor in holding that the salary paid to the timekeeper, aggregating $1059.89, was not a lienable claim. In Thompson v. Baxter, 92 Tenn., 305, it is specifically held that the salary of the supervising architect does not come within the lien law. It is there held that he is not a mechanic, undertaker, founder, machinist, or contractor. In the case of McDonnell v. R. R. Co., 93 Tenn., 290, it is held that a superintendent of the works cannot be considered as a mechanic, contractor, or subcontractor in the sense of our statutes, and that such a one is simply an office or employee at a salary. To the same effect is the case of Harris v. Marable, 138 Tenn., 676. In that case it is said: "It appears that the claimant merely supervised the work of laborers for Hartman. Is his claim within the purview of the statute?" The court said further: "The decided weight of authority is to the effect that such a superintendent is not employed to work on the building so as to come within the protection of such a statute." Citing 18 R. C. L., 912, and notes to Ann. Cas., 1913-a, 272, 1913-b, 137. In the recent case of Pillow v. Kelly, 155 Tenn., 598, the court held that one who had bored a well and furnished and installed a pump therein, was not entitled to the lien. In discussing the lien law in that case, the

court said: "The court cannot extend the benefit of the statute to either persons or objects not embraced in its terms, and in determining the breadth and scope of the Act we must be guided by the words and context." We are of the opinion that the tenth assignment of error must also be overruled.

This disposes of all the assignments of error filed by the appealing defendants.

There remain the assignments of error of complainants. These are two in number. The first is directed to the action of the court in holding and decreeing that in arriving at the amount of lienable claims against the property, the court held that the aggregate sum paid on lienable claims amounted to $82,706.19, while the amount actually spent in settling these claims was $68,577.48, and that the amount for which the claims were actually settled should have been made the basis rather than the amount of the claims as taken by the Chancellor. The second assignment of error claims that the full amount of the respective claims of complainants should have been declared a lien on the property, and not 98.8 per cent. These two assignments of error will be considered together. The learned Chancellor having in mind that liens could not be declared on the property for claims aggregating the contract price, held that all lienable claims against the property and paid by the parties, should be considered in arriving at the basis for the liens of complainants. It appeared that lienable claims amounting to $82,706.19 had been paid by the lessee or the contractor, and the court held that the aggregate amount of these lien claims should be adopted, rather than the aggregate amount actually paid in settlement of these claims amounting to $82,706.19, as the basis for ascertaining the extent of said lien claims against the owners and lessees. It is insisted by the complainants, that in so holding, the Chancellor was in error, and that instead of taking the face amount of said claims, he should have taken the amount actually paid, and if this had been done, the aggregate amount of all claims paid including the claim of the complainants, would not equal the contract price of $270,573.48, and therefore complainants would have been entitled to a lien on the property for the full amount of their claims as decreed by the Chancellor.

It appears that the net aggregate amount expended by Hanson-Worden Co. for labor and materials in the building, representing lienable claims, was $167,183.65. The total amount subsequently expended by Hanson-Worden Co. or Kress & Co., or the Continental Casualty Co., in payment and settlement of lien claims, was $68,577.48. The total amount of outstanding and unpaid lien claims, representing the three claims of the complainants, was $23,966.94. This made an aggregate amount actually paid and to be paid in

satisfaction of the liens $259,728.07. By taking the full amount of the claims at their face value of $82,706.19, plus the other lienable claims referred to, would have brought the aggregate up to an amount in excess of the contract price, and therefore the complainants' liens would have to be reduced to the pro rata portion, which the Chancellor found, and which was proper under his holding, to be 98.8 per cent. The Chancellor held that the amount of the claims representing lienable claims on the completion of the building, or within thirty days thereafter, should be taken as the basis, and the fact that these claims were subsequently settled for a less amount, would not affect the rights of these parties. This holding of the Chancellor goes on the assumption that the actual amount of these claims for which liens could have been enforced, was the full amount of the claims aggregating $82,706.19. An examination of the Master's report, and the evidence on file, shows that nearly all claims were reduced by the Master, or at least a large percentage were reduced. The record does not definitely show that the respective claims included in the aggregate of $82,706.19 actually represented the true amount for which liens could have been enforced against the property. We do not find that there was an actual discount of any of the claims made, but that the amounts of the greater number of these claims were settled for less than the parties had originally claimed, would indicate that the reductions were made because of inaccuracies, either in the amount, or as to whether all of the items in the respective claims were lienable items. We are of the opinion that the learned Chancellor was in error in holding that the full face amount of these claims should have been used as the basis, rather than the amount actually expended in the payment of the claims. In the very recent case of Richman Screw Anchor Co. v. Minter, 156 Tenn., 46, a somewhat similar question was before the court and the court said:

"We hold, therefore, that the lien claimants in these consolidated causes are entitled to enforce their lien claims in full, unless a sufficient amount of the contract price previously paid by the hotel company can be directly traced into the hands of furnishers of materials and labor entitled to liens, which amount with the total lien claims added thereto, will exceed the contract price."

We are, therefore, of the opinion that the assignments of error of complainants must be sustained, and that the decree of the Chancellor be modified so as to declare the liens for the full amount of the claims of the respective complainants as fixed by the decree. We are further of the opinion that the decree should be further modified by disallowing interest on the respective amounts decreed from the date of the filing of the respective bills, for the reason

hereinbefore set forth, but interest to be calculated from the date of the decree of the Chancellor.

With the modifications as above indicated, the decree of the Chancellor will be affirmed, and the cause remanded to the chancery court of Shelby county, to be further proceeded with under the decree of the Chancellor.

The cost of the appeals will be paid, one-half by the complainants, and one-half by the defendant appellants, and their sureties on their respective appeal bonds.

Owen and Heiskell, JJ., concur.