**STANDARD GLASS AND SUPPLY COMPANY, Appellant–Appellee,**

v.

**David L. SHELEY et al.,
Appellants–Appellees.**

**JIM LIFFORD LUMBER COMPANY,
Appellant–Appellee,**

v.

**R. K. WALKER et al.,
Appellants–Appellees.**

Supreme Court of Tennessee.

July 21, 1980.

Petition to Rehear Denied Sept. 2, 1980.

George F. Legg, Stone & Hinds, Knoxville, for Standard Glass & Supply Co. and Jim Lifford Lumber Co.

L. Caesar Stair, III, Bernstein, Susano, Stair & Cohen, Knoxville, for David L. Sheley and Barbara J. Sheley.

OPINION

COOPER, Justice.

Standard Glass and Supply Company and Jim Lifford Lumber Company filed actions

in the Chancery Court of Knox County seeking to recover damages in contract against R. K. Walker, a contractor who constructed a residence for David L. and Barbara J. Sheley, and also seeking to enforce liens against the Sheley property. The chancellor awarded the plaintiffs judgments against Walker for materials and labor the plaintiffs had expended in the construction of the Sheley residence, but refused to enforce a lien against the Sheley property, since the Sheleys had paid more for the construction of their home than called for in their contract with Walker. The Court of Appeals concluded the plaintiffs were entitled to a pro rata share of their unpaid perfected lien claims, and awarded Standard Glass a lien against the Sheley property in the amount of $1,702.38, and Lifford Lumber a lien in the amount of $892.18. The plaintiffs and the owners of the property filed applications for permission to appeal, the plaintiffs insisting they were entitled to liens in a larger amount, and the owners challenging the awarding of a lien in any amount. We granted the applications to consider these contentions. On doing so, we have concluded that under the circumstances attending the construction of the Sheley house, the Court of Appeals was correct in holding that the plaintiffs were entitled to a pro rata share of their perfected lien claims, but that their computation of the pro rata lien was incorrect.

On April 8, 1977, R. K. Walker agreed in writing a construct a "personal residence" for the Sheleys for $128,000.00. Extras subsequently agreed on by the parties increased the contract price to $131,353.00. The Sheleys were to pay Walker

Ninety (90%) of labor, materials, subcontract, equipment rental and general conditions each month. Payment (to be) made on the fifth (5th) day of month following work performed.

Walker immediately began construction of the house, submitting an Application and Certificate of Payment form each month, covering labor expended and materials purchased for the Sheley job. By December 1, 1977, the total cost of work completed and materials purchased was $129,700.00 of which the Sheleys paid Walker $117,022.00. The difference between the cost of construction and the amount paid by the Sheleys to the contractor was the 10% retainage provided for in the contract.

For all practical purposes, Walker ceased construction of the Sheley house on December 1, 1977. He testified, and the chancellor and the Court of Appeals so found, that the entire $117,022.00 he received from the Sheleys was paid to subcontractors; however, the bills of several sub-contractors, including Standard Glass and Jim Lifford Lumber Company, were not paid in full. Standard Glass filed a lien against the Sheley property on December 16, 1977. A complaint to enforce the lien was filed on March 15, 1978, and an attachment was levied on March 20, 1978. Jim Lifford Lumber Company filed a lien against the Sheley property on March 15, 1978. A complaint to enforce the lien was filed on May 18, 1978, and an attachment was levied on the Sheley property on May 24, 1978.

In June, 1978, while these suits were pending, the Sheleys hired a contractor, David L. Carter, to complete construction of the house for a 20% override of "cost for necessary work for completion of residence." Thereafter the Sheleys expended $42,817.09. Of this amount, $8,500.00 was for items outside the original contract. The remaining $34,317.09 includes payments for labor and material necessary to complete the Sheley house and also payments of the full claims of selected subcontractors for work performed or material used in the house *before* Walker abandoned the Sheley project. In addition, the record shows that there are claims outstanding for heating and air conditioning and concrete work and the lienable claims of Standard Glass and Lifford Lumber, which are the subject of these actions. From these payments and outstanding claims, it is evident that the cost of constructing the Sheley house far exceeded the contract price.

T.C.A. § 64–1120 specifically provides that:

The claims secured by lien for labor done, and materials furnished, shall in no case exceed the amount agreed to be paid by the owner in his contract with the original contractor.

■ As pointed out by the Court of Appeals, "[m]echanics' and materialmen's liens generally, and T.C.A. § 64–1120 specifically, have an inherently twofold purpose. Such a lien is important from the subcontractor's point of view in that it provides a '. . . method of securing financing . . . since it enables contractors and subcontractors to freely obtain supplies and credit without going through a financing institution. With such statutes, materialmen and laborers who extend credit are protected by a security interest in the real estate they help to improve.' Barnett, 'Mechanics' and Materialmen's Liens in Tennessee: Some Problem Areas,' 5 Mem.St.L.Rev. 359 (1975). However the statute also may be relied upon as a defense by the owner of the property in that the '. . . . limitation that the liens claimed shall in no case exceed the contract price is not a part of the definition of the rights conferred by the statute upon furnishers of labor and material, but is a limitation upon the enforcement of such rights, which may be relied upon by the owner of the property as a defense.' *Richmond Screw Anchor Co. v. Minter Co.*, 156 Tenn. 19, 300 S.W. 574 (1927)." However, the defense set forth in T.C.A. § 64–1120 is not available to the owner unless he can trace payments equal to or in excess of the contract price directly into the hands of furnishers of materials and labor. *See Richmond Screw Anchor Co. v. Minter Co.*, *supra; Richardson v. Lanius*, 150 Tenn. 133, 263 S.W. 799 (1923); *Variety Fire Door Co. v. Hanson–Worden*, 10 Tenn.App. 254 (1929).

■ In the instant case, the Sheleys had not paid the full contract price to furnishers of materials and labor when they learned through the filing of liens, if not before because of the retainage provision of the construction contract, that material furnishers were not being paid in full as work on the residence progressed, and that the total

cost of construction would exceed the contract price. T.C.A. § 64–1107 provides that where the actual construction cost of a building exceeds the contract cost, each mechanic and material furnisher shall have a lien

. . . in proportion to the amount and value of the work he does or the materials he furnishes. All liens proved by § 64–1101–64–1142, except those of laborers, shall be on a parity, and shall be settled pro rata; . . . .

Despite this statutory direction and after the construction project had been abandoned by the contractor, Walker, the Sheleys elected to pay some material furnishers under the Sheley–Walker contract their full claim while refusing to pay Standard Glass and Jim Lifford Lumber Company their pro rata claim. Having done so, the Sheleys can gain no solace from the fact that their total payments to material and labor furnishers exceeded the original contract price for the construction of their residence, and their property is subject to pro rata liens in favor of Standard Glass and Jim Lifford Lumber Company.

In *Richardson v. Lanius*, 150 Tenn. 133, 263 S.W. 799 (1923), it was emphasized that a materialman is entitled to a lien only in the proportion his claim bears to the contract price of the improvement. In commenting on this holding in *Richmond Screw Anchor Co. v. Minter Co.*, 156 Tenn. 19, 300 S.W. 574 (1927), the court pointed out that:

The gist of the holding in *Richardson v. Lanius* is to be found in the sentence contained in the opinion: 'The total *liens* could not have exceeded the contract price.' (Italics here.) In that case all the money previously paid by the owner had been paid by him directly to furnishers of labor and material who were granted liens by the statute; and the court held no more than that the previous voluntary payments by the owners to the holders of liens should be added to the amount of the lien proven by the complainant, and that if that total exceeded the contract price, then complainant could only enforce his lien in the prorata amount

which would have been awarded him if all of the lienholders had been forced to join him in his suit.

▐ In determining the pro rata liens due Standard Glass and Jim Lifford Lumber Company, the Court of Appeals followed the procedure outlined in *Richardson v. Lanius, supra.* Under that procedure, a lien claimant is entitled to that percent of the contract price his entire lienable claim bears to the entire cost of the building. The Court of Appeals concluded that the contract price in this case was the original contract price less all payments made by the Sheleys on lienable claims after Walker abandoned the project, and calculated the liens on that basis. We cannot accept this formula as the basis for determination of outstanding lien claims. A substantial part of the payments made by the Sheleys after they took over the construction project were for material and labor furnished *before* Walker abandoned the project. To deduct these payments from the contract price would profit the Sheleys and selected subcontractors at the expense of unpaid lien claimants. In our opinion, under the circumstances of this case, the better method or formula for determining the extent the liens of Standard Glass and Jim Lifford Lumber Company will be enforced is that set forth in *Variety Fire Door Company v. Hanson–Worden Co.,* 10 Tenn.App. 254 (1929). Under that method or formula, the contract price is divided by the total lienable claims, both paid and unpaid, for material and labor used in constructing the improvement in accordance with the original contract. The percentage thus determined is applied to the outstanding claims.

The contract price for the construction of the Sheley house is $131,353.00. The total of the lienable claims [1] is $167,207.10.

$$\frac{131{,}353.00}{167{,}307.10} \times 100\% = 78.5\%$$

The total lienable claim of Standard Glass and Supply Company in this case is $12,719.99. Standard Glass' prorated claim, then is, 78.5% of $12,719.99 or $9,985.20. The Sheleys made payments to Standard Glass totalling $5,728.31, which leaves a net of $4,256.89 subject to being enforced by a lien on the Sheley property.

Jim Lifford Lumber Company's pro rata lien for materials traced to the Sheley jobsite is 78.5% of $1,527.25, which calculates to be $1,198.89. No payments were received by Jim Lifford to reduce this amount.

The judgment of the Court of Appeals is modified to reflect a lien on the Sheley property in favor of Standard Glass and Supply Company in the amount of $4,256.89, and a lien on the Sheley property in favor of Jim Lifford Lumber Company in the amount of $1,198.89. As modified, the judgment of the Court of Appeals is affirmed. The cases are remanded to the Chancery Court of Knox County to enforce the liens. Costs in this court are adjudged against David L. Sheley and wife, Barbara J. Sheley and their sureties, if any.

BROCK, C. J., and FONES and HARBISON, JJ., concur.

1. $117,022.00   payments of lienable claims traced through Walker into the hands of subcontractors, and includes payment to Standard Glass of a part of its claim.

    34,317.09   payments of lienable claims by Sheley directly to subcontractors—this includes payments to finish construction of the residence and also payments to subcontractors for materials and labor furnished while Walker was on the job.

    15,968.01   outstanding claims, including the two liens that are the subject of these actions, balance due for heating and air conditioning installation, and concrete work.

    ————

$167,307.10